Landon, J.
The instrument proposed for probate, as the will of Mrs. Hopkins, was executed on the evening of Wednesday. She died on the afternoon of the following day. She was about seventy years of age, and had been *391 gradually failing for some time. She was not suffering from any acute disease, but died apparently from the general decay of her powers. Aside from her extreme feebleness, the evidence, though disclosing some eccentricities of conduct, would not establish testamentary incapacity.
If we could assume that the instrument was the voluntary expression of her wishes as to the disposition of her property, we should not attach much weight to the objections to the formality of its execution.
The real difficulty is, that the testimony is such as to incline the mind gravely to doubt whether Mrs. Hopkins •did not, in her extreme weakness, find herself unable to do otherwise than submit to the suggestions and follow the lead of Mr. Scott, the proposer of the instrument, and one of the principal beneficiaries under it. Mrs. Hopkins had no descendants, but had a brother and sister living, and also the children of one brother and two deceased sisters. Hone of these had resided with her. Mr. Scott was the son of a •sister still living. It does not appear that he had any place in her affection superior to her other next of kin. He came to her house on Tuesday manifestly for the purpose of procuring her to make her will, succeeded in procuring her assent, although her intention when in health had been expressed to the effect that the law would dispose of her property to her satisfaction. A Mr. Townsley was then procured as a draughtsman. He testified in substance that he did not understand a word she said; that he sat at a table about twelve feet away from Mrs. Hopkins; that Mr. Scott conversed with her and acted as the interpreter between her and him of her communications to Mr. Scott of the dispositions she desired to make by her will. These communications were mostly inaudible to Mr. Townsley and utterly unintelligible to him. Her voice was like a whisper. Mr. Townsley did not write anything in the instrument except these directions thus obtained through Mr. Scott. When the instrument was completed, Mr. Townsley read it over to Mrs. Hopkins. She commenced to sign her name to it, but was too feeble to proceed, and -allowed a mark to be made for her signature. She was then asked if she acknowledged that to be her signature, and she replied she did not know whether she did or not. Possibly she felt humiliated because she could not write her name. Possibly, also, this was her last attempt to express her real state of mind. She was than asked the usual questions respecting such an instrument, and she signified her assent. One of the subscribing witnesses testified: “ I think she did not care how the will was.” It is quite probable that this expression characterizes truly her *392 actual feeling. Mr. Scott seems to have taken possession of her, in her very feeble condition of body and mind, when she had neither the strength nor will to oppose his suggestions, or to advance any of her own. It is probable she understood what he said to the scrivener, but it is by no means clear that she had the courage or strength to oppose anything he said. She probably would have made no will except upon his importunity. She plainly could at this time have made none that he did not approve. We have no evidence other than that derived from her signature, and assent given as above stated, that Mr. Scott truly gave her directions to the scrivener, and there is some evidence-suggesting the thought that he gave some which he did not receive from her.
We think the surrogate did right in refusing probate to this instrument.
Mr. Scott offered himself as a witness, and was asked if he heard Mr. Townsley read the will to Mrs. Hopkins, and other questions of like import.
The surrogate sustained the objection, that under section 829 of the Code of Civil Procedure he could not give the testimony the questions called for. There was no'error in this ruling.
The testimony offered was concerning a personal transaction and communication between Mr. Scott and Mrs. Hopkins. The part which he took in the making of this will, as above referred to, had already been shown by the witnesses produced by himself. He was not asked, and therefore we assume did not desire to change in any way the version already given of the part thus taken by him. He was the self constituted interpreter between Mrs. Hopkins and the scrivener. The scrivener had written what-Scott told him to write, and nothing more. Though the scrivener did the reading, he simply read Scott’s assumed translation of her whisperings to him. Thus in reading the instrument to Mrs. Hopkins, Mr. -Townsley was the medium through whom Scott communicated to her his report to Townsley. True, it was not done by his voice, but was done in his presence and presumably at his instance, and thus falls within the spirit of section 829. Certainly it was part and parcel of the transaction between himself and the deceased.
Section 2544 does not touch this question. That section provides that “a person is not disqualified or excused from testifying respecting the execution of a will, by a provision therein, whether it (the provision) is beneficial to him or not.” This section removes whatever disqualification such a provision in a will creates, but does not remove, for it-does not include, the disqualification attaching to the testi *393 many of a party concerning his personal transactions or communications with the deceased.
The decree of the surrogate should be affirmed, with costs, against the appellant.
Learned, P. J., concurs; Bockes, J., dissents.